IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. ARENDT, | ) | CASE NO. 1:18-cv-00484 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff David A. Arendt ("Plaintiff" or "Arendt") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for social security disability benefits. Doc. 1.

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 14. Arendt challenges the ALJ's application of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)[1] with the focus of his appeal being on his "mental limitations, especially on his ability to be around coworkers." Doc. 15, p. 4. For the reasons explained herein, the Court finds that Administrative Law Judge Leland erred with respect to how he applied *Drummond* to Arendt's new application.

---

[1] In *Drummond*, the Sixth Circuit discussed the application of res judicata in social security administrative proceedings where there is a prior ALJ ruling on an earlier claim filed by the same claimant. 126 F.3d at 840-843. The Sixth Circuit recently explained that:

> The key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government. At the same time, they do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings.

*Early v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018) (emphasis in original).

Thus, the Court **REVERSES and REMANDS** the Commissioner's decision for further proceedings consistent with this Memorandum Opinion and Order.

## I. Procedural History

On August 22, 2016, Arendt protectively filed[2] an application for supplemental security income ("SSI"). Tr. 11, 101, 122, 216-221. Arendt alleged disability beginning on January 18, 2016. Tr. 11, 125, 216. He alleged disability due to heart problems, social phobia, anxiety, PTSD, OCD, dyslexia, and bipolar disorder. Tr. 126, 146, 155, 251. After initial denial by the state agency (Tr. 146-152) and denial upon reconsideration (Tr. 155-160), Arendt requested a hearing (Tr. 161). On July 19, 2017, a hearing was held before Administrative Law Judge William Leland ("ALJ" or "ALJ Leland"). Tr. 34-80. On August 29, 2017, ALJ Leland issued an unfavorable decision, (Tr. 8-32), finding that Arendt had not been under a disability within the meaning of the Social Security Act since August 22, 2016, the date the application was filed (Tr. 12, 25-26).

In reaching his decision, ALJ Leland discussed an earlier unfavorable decision rendered by Administrative Law Judge Stanley K. Chin ("ALJ Chin") on May 9, 2012, (Tr. 11-12), which pertained to a prior application filed by Arendt in October 2009 (Tr. 84). With respect to that earlier application, ALJ Chin concluded that Arendt had not been under a disability within the meaning of the Social Security Act from August 15, 2008, through the date of the decision. Tr. 85. In rendering his August 29, 2017, decision, ALJ Leland discussed the principles of Acquiescence Ruling 98-4(B) and *Drummond*, i.e., "[A]bsent change in law or evidence of

---

[2] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application." http://www.socialsecurity.gov/agency/glossary/ (last visited 3/6/2019).

improvement or deterioration in a claimant's condition, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge. Previously determined issues cannot be reexamined absent new and material evidence, or change in the law, regulations, or ruling affecting the method for arriving at the finding." Tr. 12. He proceeded to determine that, with respect to the unadjudicated period starting on January 18, 2016, the record did not demonstrate significant worsening of any impairment. Tr. 11-12. Therefore, the ALJ stated he was bound by ALJ Chin's decision and "must adopt those findings." Tr. 12. The ALJ noted an exception to his conclusion. Tr. 12. He indicated that there was a change in the regulations effective January 17, 2017, which required a different analysis of Arendt's mental impairments under Listing[3] 12.00 but found that it did not result in substantial change to Arendt's mental RFC. Tr. 12.

Arendt requested review of the ALJ's August 29, 2017, decision by the Appeals Council. Tr. 214-215. On December 28, 2017, the Appeals Council denied Arendt's request for review, making the ALJ's August 29, 2017, decision the final decision of the Commissioner. Tr. 1-7.

## II. Evidence

**A.     Personal, vocational and educational evidence**

Arendt was born in 1966. Tr. 24, 216. Arendt was homeless. Tr. 40. He was divorced. Tr. 41. He helps care for his ex-wife. Tr. 705. Arendt graduated from high school. Tr. 42. He attended special education classes while in school. Tr. 53, 252. Arendt's past work included work as a machine operator. Tr. 42-43, 61

---

[3] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 416.925.

**B.      Medical evidence**

Arendt alleged disability due to physical and mental impairments. His appeal relates solely to the ALJ's mental RFC limitations. Thus, the medical evidence summarized herein is generally limited to evidence pertaining to Arendt's alleged mental impairments.

The medical records reflect that Arendt was receiving mental health treatment as early as 2012 and continued treatment at various times until 2017 with different treatment providers. Tr. 490-534, 544-698, 890-901, 907-910, 1032-1044. The medical opinion evidence relating to Arendt's mental health impairments is summarized below.

On April 22, 2016, consultative examining psychologist Ronald G. Smith, Ph.D., evaluated Arendt. Tr. 700-707. Arendt relayed that he was applying for social security disability because he had "PTSD" from prison, knee and back problems, and had six heart attacks. Tr. 700. Arendt reported receiving mental health treatment at the Far West Center and Firelands Mental Health Center. Tr. 703. He reported trying Seroquel and Lithium. Tr. 703. Per Arendt, Seroquel caused him to sleep walk so he asked his doctors to take him off it. Tr. 703. He felt that Lithium helped him control his anger somewhat. Tr. 703. Dr. Smith observed that Arendt was basically cooperative with him but noted that Arendt was somewhat forceful and confrontational in his speech – not necessarily directed at Dr. Smith but directed at some minority groups. Tr. 704. Also, Dr. Smith observed that Arendt displayed generally a somewhat antagonistic and pugnacious attitude in his way of dealing with others who might cross his path. Tr. 704. Arendt expressed anxiety and guardedness about African Americans, which he indicated started after he was in prison. Tr. 704. Arendt reported seeing shadows at times and relayed that he once saw a dead woman walking down the street. Tr. 705. During the day, Arendt spends time with his ex-wife. Tr. 705. He helps her with her disability, makes sure she

4

takes her medications, and helps her with meals. Tr. 705. Arendt leaves his ex-wife's place in the evenings because he cannot stay there since it is metropolitan housing. Tr. 705. Arendt stated he also bought groceries for his ex-wife at the grocery store. Tr. 705. He indicated he either stays on the streets at night or at a friend's house. Tr. 704. Dr. Smith suggested diagnoses of borderline intellectual functioning (estimate), acute stress disorder, and other specified disruptive impulse control and conduct disorder (generally pugnacious attitude, impulsive and quick to anger). Tr. 706. Dr. Smith provided the following functional assessment of Arendt's abilities:

> **1. Describe the claimant's abilities and limitations in understanding, remembering, and carrying out instructions.**
>
> On a mental basis David Arendt would appear to be capable of understanding instructions that were presented visually with verbal explanation, but he may have difficulty understanding written material. His ability to remember and successfully carry out job instructions will be limited by the degree of complexity of the task and in particular will be limited by the degree to which he has to deal in the job location with minority individuals, in particular African Americans.
>
> **2. Describe the claimant's abilities and limitations in maintaining attention and concentration and in maintaining persistence and pace to perform simple tasks and to perform multi-step tasks.**
>
> He will have difficulty maintaining adequate attention and concentration and maintaining persistence in the performance of simple or more complex tasks because of his guardedness and antagonistic attitude, jumping to unjustified conclusions about people's attitudes toward him on the basis of inadequate evidence.
>
> **3. Describe the claimant's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting.**
>
> He will have difficulty dealing appropriately with supervision and coworkers in a job situation because of his pugnacious attitude and quick temper.
>
> **4. Describe the claimant's abilities and limitations in responding appropriately to work pressures in a work setting.**

5

> He will have difficulty dealing appropriately with work pressures for all the above reasons.

Tr. 706-707.

State agency reviewing psychologists also rendered opinions regarding Arendt's mental health impairments. On September 29, 2016, state agency reviewing psychologist Karla Delcour, Ph.D., completed a Psychiatric Review Technique ("PRT") (Tr. 113-114) and Mental RFC Assessment (117). Relying on AR 98-4, Dr. Delcour adopted the PRT and Mental RFC Assessment from the prior ALJ's May 9, 2012, decision. Tr. 113, 117. In doing so, Dr. Delcour concluded that Arendt had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration. Tr. 113. Also, Dr. Delcour concluded that Arendt had the following Mental RFC:

> The clmt would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work related decisions, and routine work place changes. [H]e would need work that would be isolated from the public and co-works, with occasional interaction from supervisors.

Tr. 117.

Upon reconsideration, on January 11, 2017, state agency reviewing psychologist Stanley Kravitz, Ph.D., completed a PRT (Tr. 135-136) and Mental RFC Assessment (Tr. 139-140). Like Dr. Delcour, Dr. Kravitz adopted the PRT and Mental RFC from the prior ALJ's May 9, 2012, decision. Tr. 135-136, 139-140.

**C.  Testimonial evidence**

   **1.  Plaintiff's testimony**

Arendt was represented and testified at the hearing. Tr. 40-60, 62. Arendt relayed that his mental health condition had worsened over the prior years, noting that he suffers from bipolar

disorder and schizophrenia. Tr. 45, 57. Arendt explained that he experiences depression, irritability, anger, sadness, anxiety, restlessness, and mood swings. Tr. 56-57. He explained that he does not take anything from anyone else and if someone gets in his way or says something to him that bothers him, he will say something back to them. Tr. 45, 48. The confrontations that Arendt has had with others have not turned physical – they have only been verbal. Tr. 46.

Arendt indicated he does not have family or friends. Tr. 45, 48. Arendt relayed problems with his memory, comprehending, counting math and reading. Tr. 53-54. When Arendt was working, he relied on his co-workers to assist him with tasks that required reading. Tr. 54.

Arendt was receiving counseling and psychiatric services from the Charak Center. Tr. 54-55. He also received treatment for his mental health impairments at other facilities prior to receiving treatment at Charak Center. Tr. 55.

### 2. Vocational Expert

Vocational Expert ("VE") Brian Womer testified at the hearing. Tr. 60-77. The VE described Arendt's past work as a machine operator as a semiskilled, medium level job (per the DOT), and heavy (as performed). Tr. 61.

For his first hypothetical, the ALJ asked the VE to assume an individual of Arendt's age, education and with past work experience as described who is limited as follows: light work, except no climbing ladders, ropes or scaffolds; occasional climbing of ramps and stairs and stooping; frequent balancing; avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases and poorly ventilated areas; avoid concentrated use of moving machinery and exposure to unprotected heights; would need work that is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes;

would need work isolated from the public and co-workers with occasional interaction from supervisors. Tr. 62. Prior to answering the ALJ's question whether the described individual could perform Arendt's past position, the VE requested clarification of the hypothetical as follows:

> A. I'll need clarification. I mean you had a limitation there of isolated work from co-workers.
>
> Q. Correct.
>
> A. Do you mean performing jobs alone or in isolation?
>
> Q. As opposed to?
>
> A. As opposed to in proximity to others, but not interaction as part of the job duties or no team work or tandem tasks?
>
> Q. Let's -- let's answer both of those. First with the former, in isolation, could that hypothetical individual perform the past position?
>
> A. Well, certainly the past work is ruled out simply based on exertional level and -- and that limitation, too, but the past work is not light.
>
> Q. And then, second, with respect to any other work, could that hypothetical individual perform any work?
>
> A. Not in isolation, no.
>
> Q. And, then, second, as you defined it, could that hypothetical individual perform that past position or any other work?
>
> A. Well, again, the past work is ruled out based on exertional level. Well, as well as skill level, but for a variety of reasons probably, but the past work is ruled out. Having said that, I believe there are entry level, unskilled, light jobs existing in

the national economy that could be done. . . housekeeper . . . inspector and hand packager . . . [a]nd . . . assembly machine tender . . .

Tr. 62-63.[4]

Arendt's counsel inquired about the limitation in the first hypothetical regarding isolation from co-workers and the public, where the meaning of isolation "is meant, literally, being isolated from co-workers[.]" Tr. 67. The VE explained that:

> A. . . . I mean, you know, jobs -- entry level, unskilled jobs aren't performed in isolation, meaning you're working -- you know you -- you can work independently, but you're working around other people in proximity to others. And, you know, I think that's particularly true with respect to simple routine repetitive jobs. I mean even if you think of a job that, you know, sometimes comes up, you know, somebody who's cleaning an office at night or they're working by themselves. There's nobody else around. They work at their own pace. They just have to get the work done. You know I don't consider that. I mean it's -- it's an unskilled probably, but, you know, things could come up. I mean you have to let yourself in and out of the building. You have to lock the door when you leave, you know, things like that, that --
>
> Q. Right.
>
> A. -- those that I think are higher than a standard of simply or of -- of always simple routine, repetitive work. So I don't think that there are entry level, unskilled jobs that are performed in total isolation.

Tr. 67-68.

---

[4] The ALJ asked the VE additional hypotheticals. Tr. 64-66. Those hypotheticals are not pertinent to the issue raised in this appeal and, therefore, are not detailed herein.

As part of his closing argument, Arendt's counsel urged the ALJ, when looking back at the prior ALJ's RFC, to take the term isolation to mean what the dictionary definition of isolation would mean, which Arendt's counsel argued meant that the individual is not going to be able to work around their co-workers or the public. Tr. 78. And with that limitation, Arendt's counsel argued that the identified unskilled, light jobs would not be able to be performed. Tr. 78.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[5] . . . .

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous

---

[5] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

In his August 29, 2017, decision, the ALJ made the following findings:[6]

1. Arendt has not engaged in substantial gainful activity since August 22, 2016, the application date. Tr. 14.

2. Arendt has the following severe impairments: coronary artery disease, post percutaneous transluminal coronary angioplasty; essential hypertension; hyperlipidemia; mild degenerative changes involving the L5-S1 level of the lumbar spine; mild to moderate degenerative changes of the thoracic spine; degenerative joint disease of the first CMC joint, bilaterally; patellofemoral degenerative joint disease of the right knee; sclerosis and cystic change about the greater tuberosity in the left shoulder; obesity; depressive disorder, post-traumatic stress disorder; schizoaffective disorder; bipolar disorder; and anxiety disorder. Tr. 14 .

3. Arendt does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 14-17.

---

[6] The ALJ's findings are summarized.

11

4. After careful consideration of the entire record, and pursuant to Drummond, the undersigned has adopted the findings of the prior Administrative Law Judge decision, and find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant could occasionally climb ramps or stairs but never ladders, ropes or scaffolds; could occasionally stoop; could frequently balance; would have to avoid concentrated exposure to environmental pulmonary irritants and workplace hazards, defined as unprotected heights and industrial machinery. In addition, the claimant would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple work-related decisions, and routine workplace changes. Further, he would need work that would be isolated from the public and coworkers (not working in tandem or performing work requiring teamwork), and with occasional interaction from supervisors. Tr. 17-24.

5. Arendt is unable to perform any past relevant work. Tr. 24.

6. Arendt was born in 1966 and was 50 years old, defined as a younger individual, on the date the application was filed. Tr. 24. Arendt subsequently changed age category to closely approaching advanced age. Tr. 24.

7. Arendt has at least a high school education and is able to communicate in English. Tr. 24.

8. Transferability of job skills is not material to the determination of disability. Tr. 24.

9. Considering Arendt's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Arendt can perform, including housekeeping cleaner, inspector/hand packager, and assembly machine tender. Tr. 25

10. Arendt has not been under a disability, as defined in the Social Security Act, since August 22, 2016, the date the application was filed. Tr. 25.

### V. Plaintiff's Arguments

Arendt argues that the ALJ properly adopted ALJ Chin's prior RFC assessment under *Drummond* but erred by giving the restriction to work that is "isolated from the public and coworkers" a less restrictive meaning. Doc. 15, pp. 9-14.

VI. Law & Analysis

**A.     Standard of review**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.     *Drummond v. Comm'r and Acquiescence Ruling 98-4(6)***

In *Drummond*, the Sixth Circuit held that, "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842. The Social Security Administration, in AR 98-4(6), explained how the Social Security Administration would apply *Drummond* to decisions within the Sixth Circuit. AR 98-4(6), *Effect*

*of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902 (June 1, 1998). As stated in AR 98-4(6):

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method of arriving at the finding.

*Id.* at 3.

More recently, in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (2018), the Sixth Circuit examined *Drummond* and the principles of res judicata, when reversing a district court's decision which had reversed a denial of benefits on the basis that the "'principles of res judicata' announced in *Drummond* appl[ied] only when they favor an individual applicant, not the government, in a subsequent proceeding." *Id*. at 930. The Sixth Circuit concluded that the district court was incorrect because "[t]he key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government." *Id.* at 931. Also, the court found that, "At the same time, [those principles] do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.*

In reaching its decision, the Sixth Circuit stated that "*Drummond* correctly held that res judicata may apply to administrative proceedings." *Id.* at 933. Thus, were an individual to file a second application for the same time period covered by a first application, res judicata would bar that claim absent justification for revisiting that prior decision. *Id.* However, the court went on

to explain that "[r]es judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* (internal citations omitted). Considering the foregoing, the court stated:

> All of this helps to explain why *Drummond* referred to "principles of res judicata"—with an accent on the word "principles." 126 F.3d at 841-43. What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. *Id.* at 842; *see Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999). That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

*Earley*, 893 F.3d at 933. The court further explained that, "Fresh review is not blind review. A later administrative judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

**C.     Reversal and remand is warranted**

Arendt argues that the ALJ properly adopted ALJ Chin's prior RFC assessment under *Drummond* but erred by giving the restriction to work that is "isolated from the public and coworkers" a less restrictive meaning. Doc. 15, pp. 9-14.

In rendering his August 29, 2017, decision, ALJ Leland discussed the principles of AR 98-4(B) and *Drummond*, indicating that they held that, "[A]bsent change in law or evidence of improvement or deterioration in a claimant's condition, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge [and] previously determined issues cannot be reexamined absent new and material evidence, or change in the law, regulations, or ruling affecting the method for arriving at the finding." Tr. 11-12. He proceeded to determine that, with respect to the unadjudicated period starting on January 18, 2016, the record did not

15

demonstrate significant worsening of any impairment.[7]  Tr. 11-12.  Therefore, the ALJ stated he

was bound by ALJ Chin's decision and "must adopt those findings."[8]  Tr. 12.

ALJ Leland did not adopt ALJ Chin's RFC verbatim and Arendt challenges the ALJ's

RFC based on the parenthetical ALJ Leland added to the mental RFC limitation regarding

working in isolation.[9]  ALJ Chin's mental RFC reads as follows:

> [T]he claimant would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work related decisions, and routine work place changes.  He would need work that would [be] isolated from the public and co-workers, with occasional interaction from supervisors.

Tr. 88.

In contrast, ALJ Leland's mental RFC reads as follows:

> [T]he claimant would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions, and routine work place changes.  Further, he would need work that would be isolated from the public and coworkers <u>(not working in tandem or performing work requiring teamwork)</u>, and with occasional interaction from supervisors.

Tr. 17 (emphasis supplied).

Arendt argues that the underlined portion of ALJ Leland's mental RFC has a less

restrictive meaning of isolation than was included in ALJ Chin's RFC.  Further, he argues that

---

[7] While ALJ Leland reached the conclusion that the record did not demonstrate significant worsening of any impairments, ALJ Leland found more severe impairments than ALJ Chin had found.  ALJ Chin found the following severe impairments – coronary artery disease, major depressive disorder, and cannabis abuse.  Tr. 86.  In contrast, ALJ Leland found the following severe impairments – coronary artery disease, post percutaneous transluminal coronary angioplasty; essential hypertension; hyperlipidemia; mild degenerative changes involving the L5-S1 level of the lumbar spine; mild to moderate degenerative changes of the thoracic spine; degenerative joint disease of the first CMC joint, bilaterally; patellofemoral degenerative joint disease of the right knee; sclerosis and cystic change about the greater tuberosity in the left shoulder; obesity; depressive disorder, post-traumatic stress disorder; schizoaffective disorder; bipolar disorder; and anxiety disorder.  Tr. 14.

[8] The ALJ noted an exception to his conclusion.  Tr. 12.  He indicated that there was a change in the regulations effective January 17, 2017, which required a different analysis of Arendt's mental impairments under Listing 12.00 but found that it did not result in substantial change to Arendt's mental RFC.  Tr. 12.

[9] Arendt does not argue that the ALJ erred in finding no significant worsening of any impairment.

16

the change was not harmless because the VE testified that there would be no jobs available to an individual who required isolation from co-workers in the sense that the individual could not work in proximity to others whereas there would be work available to an individual limited as modified in ALJ Leland's RFC, i.e., where isolation means not working in tandem or performing work requiring teamwork.  Tr. 62-63, 67-68.

Clearly ALJ Leland's RFC as it relates to the "isolation" limitation is not the same as ALJ Chin's.  Thus, contrary to his statement that he was applying *Drummond* and adopting ALJ Chin's RFC, he did not.  Noting that the Commissioner does not clearly argue harmless error, the Court observes that some *Drummond* errors may be harmless.  *See Ford v. Berryhill*, 207 WL 2531588, * 3 (W.D. Ky. June 6, 2017).  There are three general types of *Drummond* harmless errors.  *Id.*  The first type is where the current RFC is more favorable to the claimant than the prior RFC.  *Id.*  The second type of harmless error may occur where, although the current RFC may appear to be less favorable to the claimant, "it may be substantially the same as the prior one in light of the definitions in the Social Security Rulings (SSRs) and other sources[.]"  *Id.*  Third, the error may be harmless where the jobs relied upon by the current ALJ in support of his finding of no disability do not require the additional capacity.  *Id.*

The RFC is less favorable to Arendt.  Accordingly, the first type of harmless error described above is not applicable.  Also, the third type of harmless error is not applicable because the VE testified that there would only be jobs available if the term isolation meant not being able to work in tandem or perform teamwork.  Thus, we are left with the second type of possible harmless error, i.e., where the current RFC may appear to be less favorable to the claimant, "it may be substantially the same as the prior one in light of the definitions in the Social Security Rulings (SSRs) and other sources[.]"  *Id.*

The Commissioner contends that ALJ Chin could not have intended "total isolation." Doc. 17, p. 21. In making this argument, the Commissioner does not rely on definitions from SSRs. Rather, the Commissioner relies on the fact that the VE upon whose testimony ALJ Chin relied identified three jobs that would be available to an individual with Arendt's age, education, work experience and RFC. Tr. 93. However, there is no transcript from the hearing conducted by ALJ Chin. Thus, this Court is unable to determine whether there was further clarification during that hearing regarding the meaning of "isolation." Further, contrary to the Commissioner's argument, the Court cannot determine whether ALJ Leland did apply the same substantive finding as ALJ Chin. Additionally, the prior VE testimony was not relied upon by ALJ Leland. Rather, ALJ Leland solicited new VE testimony. And the VE testified that, if isolation meant that the individual had to work in isolation not just not work with others, there would be no jobs available.

Considering the foregoing, the Court finds that ALJ did not properly apply *Drummond*. Further, the Court finds that the *Drummond* error was not harmless and, without further articulation by the ALJ, the Court cannot assess whether the RFC, as modified, is supported by substantial evidence. Therefore, reversal and remand is warranted.

The Commissioner's argument that reversal and remand is not warranted because, consistent with *Earley*, the ALJ provided a "fresh look" at the evidence and that "fresh look" led him to clarify rather than substantively alter the prior RFC (Doc. 17, p. 19) is unpersuasive. The Commissioner is correct that *Earley* clarified *Drummond*, indicating that "[t]he key principles in *Drummond*—consistency between proceedings and finality with respect to resolved applications . . . do not prevent the agency from giving a fresh look to a new application containing new evidence." 893 F.3d at 931; *see also Poe v. Berryhill*, 2019 WL 360524, * 2 (W.D. Ky. Jan. 29,

2019) (discussing that the Sixth Circuit had recently clarified that *Drummond* "was never intended to preclude an ALJ 'from giving a fresh look to a new application containing new evidence . . . that covers a new period of alleged disability' or 'from revisiting an earlier finding . . . unless the claimant offered new and material evidence of a changed condition.'"). The court in *Earley* explained further that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, <u>albeit not binding</u>, consideration in reviewing a second application." 893 F.3d at 933 (emphasis supplied).

ALJ Leland's decision does not reflect that he provided a "fresh look" to Arendt's new application. ALJ Leland indicated he was "bound by Judge Chin's decision and must adopt those findings." Tr. 12. This is not the fresh look envisioned by *Earley*. *See e.g., Cassaday v. Comm'r of Soc. Sec.*, 2018 WL 4519989, * (W.D. Mich. Sept. 21, 2018) (finding that the ALJ's decision did not satisfy the principles set forth in *Earley*, which was decided after the plaintiff had filed his appeal – the ALJ did not consider the prior ALJ's RFC as a reference point but started her evaluation of the claimant's RFC bound by the prior ALJ's findings). Considering the foregoing, the Court is not persuaded by the Commissioner's argument that reversal and remand is not warranted because ALJ Leland complied with *Earley* by providing a "fresh look." Even if ALJ Leland thoroughly considered the record in reviewing Arendt's new application, he did not adequately explain how that review resulted in a change to Arendt's RFC mental limitations. The parenthetical included in the RFC with respect to being "isolated" appears to have been added as a result of the VE's request for clarification regarding that term. Without a more complete analysis by the ALJ regarding the modification to the working in isolation RFC limitation, the Court is unable to assess whether the RFC is supported by substantial evidence.

## VII. Conclusion

For the reasons set forth herein, the Court **REVERSES and REMANDS** the Commissioner's decision for further proceedings consistent with this Memorandum Opinion and Order.

Dated: March 6, 2019

*/s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge